**STEEBER v. UNITED STATES.**

No. 4428.

United States Court of Appeals
Tenth Circuit.

Aug. 11, 1952.

616

J. Howard Edmondson, Muskogee, Okl. (Harold R. Shoemake, Muskogee, Okl., was with him on the brief), for appellant.

Paul Gotcher, Muskogee, Okl. (Edwin Langley, Muskogee, Okl., was with him on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

This appeal presents the constantly perplexing problem of the reasonableness of a search and seizure in a prosecution for violation of the internal revenue laws pertaining to the manufacture and possession of intoxicating liquors. The appellant, Leonard W. Steeber, was convicted and sentenced in the Eastern District of Oklahoma for operating a nonregistered still, carrying on the business of a distiller without bond, working at a still, and possession of 40 gallons of nontaxpaid whiskey, in violation of Sections 2810, 2833, 2831 and 2803, Title 26 U.S.C. The principal basis for the appeal is the contention that the search and seizure without a warrant were unreasonable, and the incriminating evidence thus obtained was therefore inadmissible.

The Government first takes the position that the appellant had no constitutionally protectable interest in the premises searched or the thing seized, and therefore has no standing to complain of the search and seizure.

On a timely motion to suppress, there was evidence to the effect that on or about February 1, 1951, appellant leased or rented a small dairy farm near Ft. Gibson, Oklahoma, from a Mr. Smith for $50.00 per month. There was some conversation about appellant purchasing the farm and applying the rent on the purchase price, and also some talk of his putting someone else on the place. Appellant paid the rent until May 1, 1951. He did not live on the premises, maintaining his residence in Muskogee, Oklahoma, about ten miles distant.

About 1:30 a. m. on May 6, 1951, the Alcohol Tax Unit investigators went to the Smith Farm, and smelled what to their trained noses was fermenting mash in a barn located on the place. No search or arrest was made at that time. They returned to Muskogee and remained there until about 3:00 o'clock in the afternoon, when they again went to the place. One of the investigators took up a watch at a vantage point about 120 yards from the barn. Another investigator and a constable remained on the highway near the entrance to the place. The investigator on the vantage point could hear what to his trained ears was a still in operation, and observed the appellant and another unidentified person working in and about the barn, stacking barrels and doing other things. Two cars, two women in one and two men in the other, entered the place and stopped near the barn. As the two cars left through the front gate, the investigator from the observation point, communicating with the other two by walkie-talkie, advised them that the cars were leaving and to stop them, and that he was going to the barn. Immediately after turning into the road, the cars were stopped and ordered to turn around. When they hesitated, the officers put one of the men, Mr. Golding,

under arrest, saying "Well, you are under arrest, we'll just put you under arrest and take you back up there." While the cars were turning around, one of them sounded its horn several times. When they got back to the barn, no one was there. Upon search of the dairy barn, they found and seized a 110-gallon still, fermenting mash, and 40 gallons of nontaxpaid whiskey.

After the investigators had returned to Muskogee, and about 8:30 in the evening, appellant called Investigator Graves, wanting to know the "best way out of this". After further conversation concerning the search and seizure, appellant stated, according to the investigator, "What about someone else having that lease. I have got a signed contract where I have leased that to another party." The appellant was finally arrested and charged with the offenses the next day.

■■■ The protection against unreasonable search and seizure afforded by the Fourth Amendment to the Constitution is personal to the one asserting it, and one who objects to the introduction of evidence based upon an unlawful search or seizure must therefore claim some proprietary or possessory interest in that which was seized and sought to be introduced in evidence against the objector. Goldstein v. United States, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312; United States v. Blok, 88 U.S.App.D.C. 326, 188 F.2d 1019; Daddio v. United States, 2 Cir., 125 F.2d 924; Williams v. United States, 10 Cir., 66 F.2d 868. For the plainest of reasons, he who invokes the constitutional protection must confess or assert his constitutional interest in that which he seeks to protect. But, appellant's statement to the officer after the search and seizure indicating that he had subleased the premises to another party is insufficient, we think, to overcome the stipulated fact that he had leased the premises and paid the rent until May 1, 1951, and the undisputed evidence that just before the search he was visibly exercising control and dominion over the premises. We do not think in these circumstances that appellant is without standing to assert his constitutional right against unreasonable search and seizure.

■■ The Government also takes the position that since appellant did not occupy the house and premises as a dwelling, but resided in Muskogee, he cannot have constitutional protection against the search of the premises. In support of that contention, the Government cites and relies upon Thomas v. United States, 10 Cir., 154 F.2d 365, in which we indicated that one who did not actually occupy the premises as his home could not avail himself of the guarantees of the Fourth Amendment. But the search in that case was sustained on the statement of the complaining party to the officers at the time of the search that he had leased the premises to another, and had no interest in the contraband; and, on the further and equally sustainable ground that the complaining party had consented to the search. Regardless of the dicta in the Thomas case, we are now of the view that a dwelling does not lose its character as such merely because it may be temporarily unoccupied. See Roberson v. United States, 6 Cir., 165 F.2d 752.

■■ The premises were admittedly searched and the contraband seized without a warrant, and such search and seizure can be justified only as an incident to a lawful arrest or under exceptional circumstances making it impractical to secure a search warrant through orderly procedure. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399; United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93; Hart v. United States, 10 Cir., 162 F.2d 74.

The search was certainly not an incident to the appellant's arrest, for it did not occur until the day after the search. We do not understand the Government to contend that the search was made as an incident to the arrest of Golding. He was arrested off the premises and on the highway when he failed to promptly turn his car around at the officer's command. He was not arrested for the offense for which the appellant was later charged, and the search could not be an incident to his arrest.

There is nothing in the evidence tending to show any extraordinary or exceptional circumstances making it impractical to secure a search warrant. On the contrary, the evidence clearly indicates that the officers had reason to believe that an offense was being committed on the premises at 1:30 in the morning before the search in the afternoon, and that they had ample time and opportunity to secure a warrant.

It follows that the search was illegal and the evidence inadmissible. The judgment is reversed.

PHILLIPS, Chief Judge, concurs in the result.