**John F. WILSON, Appellant,**
v.
**UNITED STATES of America,**
**Appellee.**
**No. 4958.**

United States Court of Appeals,
Tenth Circuit.

Jan. 3, 1955.

---

1. Whether this is now the law in this Circuit is doubtful. See Southern Stevedoring Co., Inc., v. Voris, 5 Cir., 218 F.2d 250.

James W. Wilson, Denver, Colo., for appellant.

Robert D. Inman, Asst. U. S. Atty., Boulder, Colo., for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The appellant, John F. Wilson, and Newton H. Moore were indicted and convicted in the United States District Court for the District of Colorado for acquiring and having transferred to them and having in their possession three marihuana cigarette butts and two thousand eight hundred and twenty-two grains of bulk marihuana without having paid the transfer tax thereon required by law. 26 U.S.C.A. § 2593(a).[1]

Prior to trial, the appellant and his co-defendant filed a motion to suppress certain evidence which consisted of three marihuana cigarette butts and a "crutch" made out of a torn match book cover to hold the cigarette, on the ground that such evidence was procured through unlawful searches of Moore's automobile. This motion was denied. The motion was again presented at the trial and it was sustained as to one cigarette butt found during a second search, and denied as to the evidence obtained in the first search. A substantial portion of appellant's brief is directed to the action of the trial court in overruling this motion.

Prior to March 18, 1953, agents of the Bureau of Narcotics had information that the defendants would be traveling from Pueblo, Colorado to Denver, Colo-

1. This section provides:

"Persons in general. It shall be unlawful for any person who is a transferee required to pay the transfer tax imposed by section 2590(a) to acquire or otherwise obtain any marihuana without having paid such tax; and proof that any person shall have had in his possession any marihuana and shall have failed, after reasonable notice and demand by the collector, to produce the order form required by section 2591 to be retained by him, shall be presumptive evidence of guilt under this section and of liability for the tax imposed by section 2590(a)."

rado .in Moore's Cadillac automobile and would be transporting marihuana. The Colorado Highway Patrol was requested to have patrolmen on the highway between Pueblo and Denver on the lookout for this automobile, and if they observed it, to notify agents of the Bureau of Narcotics. Some time prior to midnight on March 18, 1953, a patrolman observed the automobile traveling north toward Denver and followed it into the Town of Castle Rock. There he talked to the defendant Moore, who was driving, and gave him a ticket for a traffic violation. He then followed the automobile as it proceeded in a northerly direction toward Denver. The patrolman notified agents of the Bureau of Narcotics that the automobile was on the way to Denver, and that he would overtake it and stop it before it arrived in Denver.

After traveling some distance, Moore stopped the automobile and was in front of it when the highway patrolman approached. Moore told the patrolman that the stop had been made to change drivers, and to permit Wilson to drive the remaining distance to Denver. The patrolman made some search of the automobile immediately, but found nothing. Within a short time, the federal agents arrived and an additional search was made with the same result. The automobile was taken to a garage near the outskirts of Denver by the agents where, with Moore's assistance, it was searched further. Moore testified that he did not consent to the search but he "helped them .search, I volunteered to help them search myself because I hadn't did anything". Two marihuana cigarette butts and the "crutch" [2] were found in the automobile. Neither Moore nor Wilson

was held at the time. A short time later, they were again stopped on the same highway leading into Denver from the south, and arrested after a chase by the same patrolman at a very high rate of speed. In another search of the automobile, the following morning, a third marihuana cigarette butt was found. All of the searches were made without a search warrant.

The assignment of error presents only the question of whether the search, in which the first two cigarette butts were found, was illegal in violation of Wilson's constitutional rights. United States Constitution, Amendment 4. The motion to suppress did not allege that the cigarette butts were the property of either Moore or Wilson, and neither claimed them. Wilson did not testify in support of the motion, and Moore did not contend that the cigarette butts were his. Instead, he maintained his innocence.

■ The law is well settled that the protection of the Fourth Amendment to the Constitution against unreasonable search and seizure is personal to the one asserting it, and one who claims no proprietary or possessory interest in that which has been seized as a result of a search may not object to its introduction in evidence. Scoggins v. United States, 92 U.S.App.D.C. 29, 202 F.2d 211; Steeber v. United States, 10 Cir., 198 F.2d 615, 33 A.L.R.2d 1425; Lewis v. United States, 10 Cir., 92 F.2d 952; Williams v. United States, 10 Cir., 66 F.2d 868; Coon v. United States, 10 Cir., 36 F.2d 164; Shields v. United States, 58 App.D.C. 215, 26 F.2d 993, certiorari denied 278 U.S. 633, 49 S.Ct. 31, 73 L.Ed. 550.[3]

2. A "crutch" is an improvised holder for marihuana cigarettes while they are being smoked.

3. In Steeber v. United States, supra, this court said [198 F.2d 617]:

"The protection against unreasonable search and seizure afforded by the Fourth Amendment to the Constitution is personal to the one asserting it, and one who objects to the introduction of evidence

based upon an unlawful search or seizure must therefore claim some proprietary or possessory interest in that which was seized and sought to be introduced in evidence against the objector. Goldstein v. United States, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312; United States v. Blok, 88 U.S.App.D.C. 326, 188 F.2d 1019; Daddio v. United States, 2 Cir., 125 F.2d 924; Williams v. United States, 10 Cir., 66 F.2d 868. For the plainest of

United States v. Jeffers, 342 U. S. 48, 72 S.Ct. 93, 95, 96 L.Ed. 59, cited by the appellant, is not to the contrary. In that case the defendant had access to a room occupied by two relatives. He left therein a substantial quantity of narcotics which was seized by officers who, in the absence of the occupants, gained entrance into the room without a search warrant. The Court held that Jeffers had standing to object to the search. It will be noted, however, that "he claimed ownership of the narcotics seized." The appellant contends that the question is not properly before this court because the trial court did not rule on the question. But the appellant made the motion to suppress and the burden was on him to prove the facts necessary to sustain his position. This he failed to do. Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307; White v. United States, 5 Cir., 194 F.2d 215; Jarabo v. United States, 1 Cir., 158 F.2d 509; Schnitzer v. United States, 8 Cir., 77 F.2d 233. The motion to suppress was properly overruled.

Wilson contends that there is no evidence in the record which connects him in any way with the marihuana cigarette butts or the two thousand eight hundred and twenty-two grains of bulk marihuana which was introduced in evidence. The case went to the jury upon the proof of the prosecution. We have carefully examined the evidence and have concluded that it was sufficient to present an issue for the jury, although it is not a strong case as to Wilson. The mere riding in an automobile in which marihuana was being transported would not in itself be sufficient to connect a passenger or occupant with the possession or transportation. In this case, however, when the highway patrolman first followed the defendants, the automobile was speeded up to a high rate of speed before it was stopped in Castle Rock. The automobile continued on from Castle Rock, followed by the same patrolman who was in sight of it most of the time. The automobile was stopped by Moore for the purpose of letting Wilson drive it into Denver. After the search at a garage in Englewood, Moore and Wilson were told that they would not be held, but were instructed to follow the agents to the Denver City Police Station. Instead of doing this, both Moore and Wilson returned back toward Castle Rock on a highway which eventually brought them to a point south of the place on the highway where the automobile was first searched. They were proceeding toward Denver on this highway when they were met by the patrolman who first stopped them. The patrolman recognized the automobile and set out to stop it again. This he was able to do after a chase at a very high rate of speed. Both defendants were taken to the Englewood Police Station in the patrolman's car. No one else was in the patrol car except the patrolman and the two defendants. After the defendants were lodged in jail, the patrolman took the patrol car to his home at Castle Rock, locked it, and the next morning delivered it to another patrolman. A short time thereafter, and before anyone else had been in the patrol car, the second patrolman found the package containing the two thousand eight hundred and twenty-two grains of marihuana concealed underneath the front seat where the defendants had ridden when they were being taken to the police station. The testimony was that no one else had been in the car except the patrolmen and the defendants. Under these circumstances, we think the jury was justified in concluding that Moore and Wilson were engaged in a joint venture in connection with the marihuana, and that they had obtained it from some source on the second trip and had hidden it under the patrol car seat after the second arrest.

Judgment affirmed.

reasons, he who invokes the constitutional protection must confess or assert his constitutional interest in that which he seeks to protect."