Richard W. BURGE, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18801.

United States Court of Appeals Ninth Circuit.

May 29, 1964.

Kay & Miller, Wendell P. Kay, Anchorage, Alaska, for appellant.

Warren C. Colver, U. S. Atty., H. Russell Holland, Asst. U. S. Atty., Anchorage, Alaska, for appellee.

Before CHAMBERS, Circuit Judge, MADDEN, Judge of the United States Court of Claims, and JERTBERG, Circuit Judge.

JERTBERG, Circuit Judge.

Following a trial to a jury, appellant was convicted on one count of a two count indictment charging violations of 21 U.S.C. § 174.[1]

The count upon which appellant was convicted (Count 2) in substance charged that on or about the 23rd day of April, 1959 at Fairbanks, Alaska, the appellant did knowingly conceal and facilitate transportation of a narcotic drug, to wit: heroin.

Count 1, on which the jury was unable to agree, in substance charged that on or about the 23rd day of April, 1959 at Fairbanks, Alaska, appellant knowingly received, sold and facilitated the sale of a narcotic drug to wit: heroin, to Hazel Geary.

Following conviction the appellant was committed to the custody of the Attorney General of the United States for a period of five years.

Appellant's specification of errors may be grouped as follows:

1. Errors of the District Court in refusing to suppress, and in admitting into evidence, certain proffered exhibits claimed to have been obtained in violation of the provisions of the Fourth Amendment prohibiting unreasonable search and seizure;

2. Errors of the District Court in denying appellant's motion for judgment of acquittal made at the close of the government's case and renewed at the close of all of the evidence; and

3. Errors of the District Court in the giving of certain instructions to the jury.

---

1. "Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law * * * shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. * * *

"Whenever on trial for a violation of this section the defendant is shown to have or have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

Before considering other specified errors, we shall first consider appellant's contention that the District Court erred in denying appellant's motion for a judgment of acquittal, under which contention we shall also consider whether the verdict of the jury is supported by substantial evidence.

The essential elements of the offense on which the jury returned its verdict of guilty are:

1. Knowingly concealing and facilitating the transportation of heroin;

2. Unlawful importation of the heroin by someone; and

3. The defendant's knowledge of such unlawful importation.

See Griego v. United States, 298 F.2d 845 (10th Cir. 1962).

■ Under the second paragraph of § 174, quoted supra, proof that the defendant is shown to have or have had possession of a narcotic drug shifts to him the burden of explaining such possession to the satisfaction of the jury. In the absence of such satisfactory explanation, the application of the statutory rule of evidence or prima facie presumption set forth in § 174 shall be deemed sufficient to authorize conviction. In such circumstances the rule of evidence or prima facie presumption furnishes sufficient proof to establish the illegal importation of the narcotic drug and the defendant's knowledge that the narcotic drug was illegally imported. Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925); Hernandez v. United States, 300 F.2d 114 (9th Cir. 1962); Erwing v. United States, 323 F. 2d 674 (9th Cir. 1963).

■ Our review of the evidence convinces us that there is abundant evidence to establish the essential elements of the offense. The District Court properly denied appellant's motion and renewal thereof for judgment of acquittal. The testimony of the government's witness, Hazel Geary, standing alone, furnishes sufficient evidence to support the verdict.

Hazel Geary testified: That on the night of April 20, 1959, appellant approached her with a proposal to "dump a large quantity of heroin"; that she demanded a sample before she would do business on a larger scale; that she was furnished $20.00 by the law enforcement officers and purchased a sample of heroin from appellant on April 22, 1959; that on that day she turned over to the officers an eyedropper and a hypodermic needle which evidenced a trace of narcotics [Exhibit "A" at the trial]; that at noon on April 23, 1959, she was furnished $400.00 in marked currency by the law enforcement officers and about 2:30 o'clock of that day purchased a quantity of heroin from the appellant for said amount; that after the purchase she remained with appellant until about 7:30 o'clock of that day when appellant transported her in his car to the Idle Hour Cafe where both were arrested. She further testified that just prior to the departure for the Idle Hour Cafe appellant stated to her, "You don't want to be out there with that stuff on you." The heroin which Hazel Geary claimed to have purchased from appellant on that day was turned over to the officers after her arrest [Exhibit "B" at the trial]. A search of the person of appellant and his automobile disclosed neither narcotics nor marked currency.

■ It is to be remembered that on appeal, following conviction, the evidence is to be viewed in the light most favorable to support the verdict. It is also to be remembered that the credibility of Hazel Geary and the weight to be accorded her testimony are matters within the exclusive province of the finder of the facts. While it is true that Hazel Geary admitted that she was a prostitute, a narcotic addict, had been convicted of a felony, to wit: grand theft, was a government informer on appellant and was under a pending indictment for the offense of passing travelers checks knowing the same to have been forged, and on which charge she had not been tried at the time of appellant's trial in September of 1962, nevertheless, by the implied find-

ing of the jury it chose to believe her testimony rather than the testimony of the appellant who denied all knowledge of or connection with the narcotic traffic of which he was accused.

We will now consider the alleged errors of the District Court in refusing to suppress, and receiving in evidence, proffered exhibits claimed by appellant to have been obtained in violation of his Constitutional guarantee to be free of unreasonable search and seizure.

The record reveals that appellant came from Anchorage to Fairbanks, Alaska on the 18th day of April, 1959 to engage in the cardroom business with one Arthur Bell. From his arrival until his arrest he was a guest in a two bedroom dwelling house located in Fairbanks, rented and partially occupied by one Dolores Jean Wright; that following the arrest of appellant and Hazel Geary at the Idle Hour Cafe, in the early evening of April 23, 1959, Dolores Jean Wright was arrested, accused of illegal possession of narcotics and taken to police headquarters. Two law enforcement officers testified that following the arrest of Dolores Jean Wright they requested her permission to search her apartment; that Dolores Jean Wright said "yes" that she had nothing to hide, although when presented a written waiver of search she refused to sign it, saying, "You don't need that, you got my permission." The officers further testified that based solely on the verbal permission, a search of Dolores Jean Wright's apartment was made. As a result of the search they obtained items consisting of a glass bottle containing material identified as milk sugar [Exhibit "C"], and an eyedropper and hypodermic needle [Exhibit "D"], all of which items were taken from the bathroom of the apartment; that when the search was made no one was in the apartment and the searching officers were unaware that appellant was staying there as a guest. Upon objection of appellant to the admission of said exhibits, a hearing was held before the court in the absence of the jury. Witnesses heard at that hearing were Dolores Jean Wright, two officers who testified they had secured verbal permission to search the premises and another officer who testified that after the search Dolores Jean Wright was requested to sign a written consent to search but that she refused to do so. Following the hearing the two exhibits were received into evidence.

In the presence of the jury, after receipt of Exhibits "C" and "D" into evidence, there was testimony that appellant's fingerprint was found on the glass bottle [Exhibit "C"]; and that the eyedropper and hypodermic needle [Exhibit "D"] evidenced a trace of narcotics. Hazel Geary testified that a bottle similar to Exhibit "C" had been used by appellant in the apartment of Dolores Jean Wright in the course of mixing the heroin which she purchased from appellant [Exhibit "B"] on April 23, 1959.

Later in the proceedings, and before the case was submitted to the jury, the District Judge concluded that the admission into evidence of Exhibit "D" was in error, in that the items constituting said exhibits were not sufficiently linked to the defendant. Thereupon Exhibit "D" was stricken from the evidence and the jury was instructed to disregard the testimony relating thereto.

The evidence consisted of the $400.00 in marked currency which had been furnished by the law enforcement officers to Hazel Geary on April 23, 1959. Prior to the trial appellant moved the District Court to suppress such evidence. Following the hearing on the motion and prior to trial the District Court denied the motion to suppress. It appears that following the arrest of appellant on the evening of April 23rd, the automobile of appellant was impounded by the officers. While so impounded, and on April 30, 1959, the officers received information from an undisclosed source that the marked money was secreted in appellant's car. On search of the same, without a search warrant and without appellant's permission, the officers found the marked currency secreted in the headlight section of his car.

We shall first discuss the refusal of the District Court to exclude Exhibits "C" and "D".

As above stated, prior to the receipt in evidence of said exhibits, appellant moved to suppress the same for use in evidence under the provisions of Rule 41(e), Federal Rules of Criminal Procedure. The District Judge in his discretion elected to entertain the motion, although not timely made, and held a hearing in the absence of the jury. Following the hearing appellant's motion was denied and the exhibits received in evidence over the objection of appellant. It was the view of the District Court that the appellant, having only the status of a house guest in the apartment of Dolores Jean Wright, was bound by the verbal permission granted by her to the officers to search her apartment.

While there is much discussion in the briefs relating to the degree and character of proof required on the part of the government to support the validity of the search based upon oral permission of Dolores Jean Wright given while under arrest and in custody of her accusers, we deem it unnecessary to decide the validity of the search as it might affect her. For the purposes of our opinion we will assume that if Dolores Jean Wright had been a defendant in the trial under review, the verbal permission given by her to the officers to search her apartment would have precluded her from relying upon the provisions of the Fourth Amendment to exclude the exhibits. However, Dolores Jean Wright is not named in the indictment returned against appellant and was not a party to the trial resulting in appellant's conviction.

The problem before us is whether the search is lawful as it relates to the appellant. The government makes no claim: (1) that the search was based upon a search warrant; (2) that the search was incidental to a lawful arrest; (3) that the search was made with the consent of appellant; (4) that Dolores Jean Wright was authorized to consent to the search on behalf of appellant; or (5) that exceptional circumstances existed which might justify the search without a search warrant.

The government concedes that on the night of the search appellant was, and for several days prior thereto had been, a house guest of Dolores Jean Wright. During such period appellant occupied one of the two bedrooms in the apartment, and shared the use of the one bathroom in the apartment as well as the kitchen, living room and back porch. The appellant was under arrest and in custody at the time of the search. While the oral consent to search granted by Dolores Jean Wright was to the apartment, the record is clear that the search was directed toward the appellant who had been under almost constant surveillance of the officers for some time before the search, who were maintaining liaison with the appellant through their informant, Hazel Geary, and who were likewise stationed in the vicinity of the apartment in order to observe those leaving or entering the apartment. It is crystal clear that the primary purpose of the search of the apartment was to secure incriminating evidence against the appellant.

No reason appears in the record why a search warrant for the premises was not obtained since it appears that there was ample time and opportunity to do so. To validate the search, the government relies upon the consent given by Dolores Jean Wright while in custody under arrest on a serious charge, and without benefit of counsel.

The Fourth Amendment [2] prohibits unreasonable searches and seizures, and its

2. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

protection extends to both "houses" and "effects". United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951).

In Jones v. United States, 362 U.S. 257, at page 261, 80 S.Ct. 725, at page 731, 4 L.Ed.2d 697 (1960), the Supreme Court stated:

"In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else. Rule 41(e) applies the general principle that a party will not be heard to claim a constitutional protection unless he 'belongs to the class for whose sake the constitutional protection is given.' People of State of N. Y., ex rel. Hatch v. Reardon, 204 U.S. 152, 160 [27 S.Ct. 188, 190, 51 L.Ed. 415]. The restrictions upon searches and seizures were obviously designed for protection against official invasion of privacy and the security of property. They are not exclusionary provisions against the admission of kinds of evidence deemed inherently unreliable or prejudicial. The exclusion in federal trials of evidence otherwise competent but gathered by federal officials in violation of the Fourth Amendment is a means for making effective the protection of privacy."

While the District Court's refusal to suppress Exhibits "C" and "D" was not grounded upon the lack of "standing" of appellant to question the search because he did not claim any interest, possessory or otherwise, in the seized articles, the implicit basis of such refusal was on the ground that since appellant's status was only that of a house guest, he did not have a sufficient interest in the searched premises to establish him as "a person aggrieved" by the search and that the verbal consent of Dolores Jean Wright to the search was all that was required to validate the same in respect to him.

Appellee contends on this appeal that appellant (a) "lacks standing to question the search in which said exhibits were seized because he was not present at the time of the search" and " * * * was merely a house guest in the searched premises and as such was bound by the consent for a search given by the occupant of the premises, Mrs. Wright"; and (b) "because he did not allege ownership or right to possession of the items seized."

We believe that the appellee is wrong on both contentions. Exhibits "C" and "D" consisted of narcotic paraphernalia containing a trace of narcotics. Furthermore, in relation to the apartment appellant occupied the status of a house guest.

In Jones v. United States, supra, the defendant was arrested in a private apartment by federal narcotic agents who were executing a warrant to search the apartment for narcotics. The search revealed the presence of narcotics and narcotic paraphernalia. Prior to the trial the defendant moved to suppress the evidence obtained through the execution of the search warrant. The government challenged the defendant's standing to make the motion because he alleged neither ownership of the seized narcotics nor an interest in the apartment greater than that of "an invitee or guest." The hearing disclosed that the apartment belonged to a friend of the defendant; that the friend had given him a key and the right to use the apartment for which the defendant paid nothing. The defendant's home was elsewhere and he had slept in the apartment perhaps one night. The Supreme Court held:

(a) where the indictment charges possession of narcotics, the defendant is 'a person aggrieved by the unlawful search and seizure; and

(b) that the defendant had a sufficient interest in the premises to establish him as a person aggrieved by the search.

As to holding (a) above the court stated at page 263 of 362 U.S. at page 732 of 80 S.Ct.:

"As to the first ground, we are persuaded by this consideration: to hold to the contrary, that is, to hold that petitioner's failure to acknowledge interest in the narcotics or the premises prevented his attack upon the search, would be to permit the Government to have the advantage of contradictory positions as a basis for conviction. Petitioner's conviction flows from his possession of the narcotics at the time of the search. Yet the fruits of that search, upon which the conviction depends, were admitted into evidence on the ground that petitioner did not have possession of the narcotics at that time. The prosecution here thus subjected the defendant to the penalties meted out to one in lawless possession while refusing him the remedies designed for one in that situation. It is not consonant with the amenities, to put it mildly, of the administration of criminal justice to sanction such squarely contradictory assertions of power by the Government. The possession on the basis of which petitioner is to be and was convicted suffices to give him standing under any fair and rational conception of the requirements of Rule 41(e)."

As to holding (b) above the court stated at page 265 of 362 U. S., at page 733 of 80 S.Ct.:

"As a second ground sustaining 'standing' here we hold that petitioner's testimony on the motion to suppress made out a sufficient interest in the premises to establish him as a 'person aggrieved' by their search. That testimony established that at the time of the search petitioner was present in the apartment with the permission of Evans, whose apartment it was. The Government asserts that such an interest is insufficient to give standing. The Government does not contend that only ownership of the premises may confer standing. It would draw distinctions among various classes of possessors, deeming some, such as 'guests' and 'invitees' with only the 'use' of the premises, to have too 'tenuous' an interest although concededly having 'some measure of control' through their 'temporary presence,' while conceding that others, who in a 'realistic sense, have dominion of the apartment' or who are 'domiciled' there, have standing. Petitioner, it is insisted, by his own testimony falls in the former class.

"While this Court has never passed upon the interest in the searched premises necessary to maintain a motion to suppress, the Government's argument closely follows the prevailing view in the lower courts. They have denied standing to 'guests' and 'invitees' (e. g., Gaskins v. United States, 95 U.S.App. D.C. 34, 35, 218 F.2d 47, 48; Gibson v. United States,⁰ 80 U.S.App. D.C. 81, 84, 149 F.2d 381, 384; In re Nassetta, 2 Cir., 125 F.2d 924; Jones v. United States, 104 U.S.App.D.C. 345, 262 F.2d 234), and employees, who though in 'control' or 'occupancy' lacked 'possession' (e. g., Connolly v. Medalie, 2 Cir., 58 F.2d 629, 630; United States v. Conoscente, 2 Cir., 63 F.2d 811). The necessary quantum of interest has been distinguished as being, variously, 'ownership in or right to possession of the premises' (e. g., Jeffers v. United States, 88 U.S.App.D.C. 58, 61, 187 F.2d 498, 501, affirmed Jeffers v. United States, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59), the interest of a 'lessee or licensee' (United States v. De Bousi, D.C., 32 F.2d 902, 903), or of one with 'dominion' (McMillan v. United States, 8 Cir., 26 F.2d 58, 60; Steeber v. United States, 10 Cir., 198 F.2d 615, 617, 33 A.L.R.2d 1425). We do not lightly depart from this course of decisions by the lower courts. We are persuaded, however, that it is unnecessary and ill-advised.

to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions, developed and refined by the common law in evolving the body of private property law which, more than almost any other branch of law, has been shaped by distinctions whose validity is largely historical. Even in the area from which they derive, due consideration has led to the discarding of these distinctions in the homeland of the common law. See Occupiers' Liability Act, 1957, 5 and 6 Eliz. 2, c. 31, carrying out Law Reform Committee, Third Report, Cmd. 9305. Distinctions such as those between 'lessee,' 'licensee,' 'invitee' and 'guest,' often only of gossamer strength, ought not to be determinative in fashioning procedures ultimately referable to constitutional safeguards."

Also see: Henzel v. United States, 296 F.2d 650 (5th Cir. 1961). In the latter case the court stated at page 651:

"In Jones, the Supreme Court held that a person accused of possessing narcotics in violation of the Federal Narcotics Laws could attack the Government's allegedly unlawful seizure of the narcotics even though (a) his presence in the apartment where the narcotics were seized was merely that of a 'guest' or 'invitee,' and (b) he did not admit to 'ownership' of the narcotics. In so holding, the Court repudiated the rule which had been adopted by many Courts of Appeals that, in order to qualify as 'a person aggrieved by an unlawful search and seizure,' the accused must show ownership or possession of the seized property or a substantial possessory interest in the invaded premises."

In United States v. Jeffers, supra, two aunts of the defendant in that case rented and paid for a room in a hotel. They gave the defendant a key to their room and gave him permission to use the room at will and he often entered the room for various purposes. The aunts had not given him permission to store narcotics there and they had no knowledge that there were any so stored. In the absence of the aunts and of the defendant, law enforcement officers entered the room with the permission of the assistant manager of the hotel. Without a search or an arrest warrant they unlocked the door to the room and conducted a detailed search which revealed narcotics which they seized. On the basis of the seized narcotics, defendant was convicted of violating the narcotics law. The Court of Appeals for the District of Columbia Circuit reversed the conviction and such decision was affirmed by the Supreme Court.

In Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961), acting without a warrant but with the consent of the defendant's landlord, law enforcement officers entered—through an unlocked window—and searched the defendant's rented house, in his absence, and there found and seized an unregistered "distillery" and "mash". Prior to trial defendant moved the court for an order suppressing the use of the seized items as evidence on the ground that they were obtained by an unlawful search and seizure. Such motion was denied and upon such evidence defendant was convicted. The Supreme Court held that the search was unlawful, and since evidence obtained through the search was admitted at the trial, the conviction was reversed.

In Henzel v. United States, supra, the defendant was the sole stockholder and president of a corporation. One, Cooper, recovered judgment against the corporation and obtained a general levy on the corporation's assets. Thereafter a deputy sheriff, acting under the general levy, removed most of the corporation's property to a warehouse where it was to remain pending a sale to satisfy Cooper's judgment. The deputy sheriff permitted the United States Postal Inspector to search the corporation's premises and to seize most of the corporation books and

records which were in the office. The defendant was not on the premises when the search and seizure occurred. On defendant's trial for "mail fraud", the books and records so seized were received in evidence over defendant's objection following a denial of a motion to suppress. The Court of Appeals for the Fifth Circuit reversed the defendant's conviction.

■ While no decision of the Supreme Court of the United States has been called to our attention relating to the extent of protection afforded by the Fourth Amendment to a "house guest", we believe that such protection is no less than that extended to a tenant of a building, to a paying guest of a hotel, or to a lodger in a rooming house, and that the consent to search given by a host of a "house guest" to those portions of the premises to which the "house guest" has access and uses with the express or implied permission of his host, is no more binding upon the "house guest" than the consent to search given by a landlord to the premises of a tenant, or the consent given by the manager of a hotel to the room of a paying guest. The single fact that rent be paid in one case and not in the other should not determine one's right to be free from unreasonable searches and seizures. Such a holding does not limit the right of a host to invite others onto the premises, including law enforcement officers, nor does it limit the right or duty of a host, with suspicion or knowledge of the presence of contraband on the premises to furnish to law enforcement officers such information which he has and which might lead to the proper issuance of an arrest or search warrant. It simply precludes the use as evidence in a criminal trial against the "house guest" of articles which have been unlawfully seized by law enforcement officers during a search directed primarily to secure incriminating evidence against the "house guest". We do not believe that in the circumstances of this case the mere verbal consent to search given by Dolores Jean Wright converts what would otherwise be an unreasonable sei-

zure into a reasonable one. We believe that in the circumstances of this case the appellant as a "house guest" belongs to the class for whose sake the Constitutional protection is given.

■ We hold the District Court erred in failing to suppress. Exhibits "C" and "D" and in refusing to exclude said exhibits from use in evidence. The fact that the District Court, during the course of the trial, struck Exhibit "D" from evidence and admonished the jury to disregard the same does not, in our view, cure the error. We refuse to speculate on the extent to which the verdict of the jury was influenced by the presence of Exhibit "C" in relation to all the other evidence in the case.

■■ Although the judgment of conviction must be reversed and the cause remanded to the District Court with instructions to grant appellant a new trial, we deem it appropriate to say that the District Court did not err in denying appellant's motion to suppress Exhibit "E", consisting of marked currency discovered in appellant's automobile by the officers, following a search without a warrant.

49 U.S.C. § 781 in pertinent part provides:

"(a) It shall be unlawful (1) to transport, carry, or convey any contraband article in, upon, or by means of any * * *, vehicle, * * *; (2) to conceal or possess any contraband article in or upon any * * *, vehicle, * * *, or upon the person of anyone in or upon any * * *, vehicle, * * *; or (3) to use any * * *, vehicle, * * * to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange, or giving away of any contraband article.

"(b) As used in this section, the term 'contraband article' means—

"(1) Any narcotic drug which has been or is possessed with intent to sell or offer for sale in vi-

olation of any laws or regulations of the United States dealing therewith; or which has been acquired or is possessed, sold, transferred, or offered for sale, in violation of any laws of the United States dealing therewith; * * *; or which does not bear appropriate tax-paid internal-revenue stamps as required by law or regulations;

"(2) * * *;

"(3) * * *."

49 U.S.C. § 782 in pertinent part provides:

"Any * * *, vehicle * * * which has been or is being used in violation of any provision of section 781 of this title, or in, upon, or by means of which any violation of said section has taken or is taking place, shall be seized and forfeited: *Provided,* * * *."

Upon the arrest of appellant his automobile was seized by the officers and he was notified immediately that his car was being impounded "because it had been used in the sale and possession of narcotics." From the evidence which we have outlined above, it is apparent that the officers who seized the car had probable cause for believing that the car had been used in violation of the provisions of 49 U.S.C. § 781. See United States v. One 1952 Ford Victoria, 114 F.Supp. 458 (N.D.Cal.S.D.1953). From the time of seizure until the search, the vehicle was in the lawful custody of the United States. In these circumstances the search without a warrant of appellant's car could not be said to be "unreasonable." It is only unreasonable searches that are prohibited. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).

Since the cause is to be remanded to the District Court for a new trial, we deem it unnecessary to pass upon certain jury instructions refused or given by the District Court to which appellant made timely offers and objections. Similar instructions may or may not be given or refused on the new trial.

The judgment of conviction is reversed and the cause remanded to the District Court with instructions to grant appellant a new trial.

MADDEN, Judge (dissenting).

Our question is whether the officers' search of the apartment, in which they found Exhibit C, the bottle of milk sugar, and Exhibit D, the eyedropper and hypodermic needle, was a reasonable search. They made the search with the consent of Dolores Jean Wright, the tenant of the two-bedroom apartment. There was contradictory evidence about the fact, and the voluntariness, of her consent. The trial judge found that she had consented to the search, and that her consent was voluntary. We would have no possible reason to hold that that finding was clearly erroneous.

Our situation is, then, that the tenant of a small apartment is accused by the police of some violation of law with regard to narcotics. She denies the accusation. The officers ask whether they may search her apartment. She says that they may, that she has nothing to hide. They enter and search, and, in the one bathroom, the only one in the apartment, they find Exhibits C and D, articles frequently used in the preparation and use of narcotics. They take those articles and scientific examination of them shows a fingerprint of the defendant on Exhibit C and traces of heroin in the two items which are Exhibit D.

This court holds that, in the defendant's trial for violation of the narcotics laws, after the prosecution had shown that the defendant, as a guest of Dolores Jean Wright, had been using her bathroom during the days preceding the search, it could not introduce in evidence the items found in the search. Obviously the items did not prove much, since the defendant might well have picked up numerous articles in the bathroom and thus left his fingerprints on them, quite innocently, and the two items in Exhibit D, with traces of heroin in them, could have belonged to Dolores Jean Wright or to other acquaintances of hers. The con-

viction of the defendant, by the jury, of the violation of the narcotics law must have been induced, at least in the main, by the other evidence in the case, which, as the court says, was sufficient and persuasive.

The importance to the court of the seemingly rather trifling items Exhibits C and D is that they, in the court's opinion, inject into the case a problem of the highest importance, a problem of Constitutional law. With deference, I think they do nothing of the kind. I think the search was reasonable and lawful, though not much was found.

If a tenant of a two-bedroom, one-bathroom apartment rents one of her bedrooms to another person, and if the narcotics squad picks up a narcotics victim and asks him where he got the narcotics, and he says he got them in that apartment, and the officers go to the apartment and tell the tenant what they have heard and she indignantly denies the possibility of such an occurrence and the officers ask if they may look through the apartment and she says they may but they will not find anything, and they do look and they find narcotics in the bathroom, may they not seize them? Does the Constitution say that this lady may lawfully consent to the entrance into her bathroom of any person in the whole wide world except officers of the Government whose duty it is to enforce that Government's laws? Does it say that the officers, having entered and seen objects whose only use is to violate the laws, have somehow blundered, so that the conclusive evidence which they have thus discovered cannot thereafter be used by their Government to convict the guilty person?

In the situation just recited, should the officers, in order to be faithful to the Constitution, have had to ask the landlady if she had a guest or a lodger, because if she did they must not enter until they have hunted up the guest or lodger and obtained his consent? And if they had told the landlady that, would not her sensible reply have been, "If it is suspected that I have a lodger or a guest who is using my hospitality as a base for dealing in narcotics, I am insisting that you come in immediately and search at least the parts of my premises which both I and my guest or lodger use"?

Who could say that the lady's expression was merely a throwback to some anachronistic conception of real property law derived from some social situation of the Middle Ages now discoverable only by historical research? I would say that her expression made just as good sense and good law in 1964 as it would have made in 1564. If one, by inviting a guest. or taking a lodger in his spare bedroom, so ceases to be the master of his own front hall or bathroom that he cannot police them or invite his Government to police them against their use as depositories of narcotics, his status has been degraded. I think the Constitution is degraded by attributing to it such an effect.

The court relies heavily upon the opinion of the Supreme Court of the United States in the case of Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. In that case the United States District Court, and the Court of Appeals, had held that the defendant, because he denied that the seized narcotics were owned or possessed by him, and because he was only a guest in the house where they were seized, had no *standing* to object to their admission in evidence. In the Supreme Court, the Government sought to sustain the position of the lower courts on these points. On the first point, that the defendant's denial of an interest in the seized narcotics left him without standing to complain of their seizure, the court, of course, held that since the defendant and the Government each were impaled on the horns of a dilemma in such situations, the defendant should be the one who could escape the dilemma without damage. In the instant case the Government does not urge that the defendant lacks standing on that ground, and if it did urge it, we would reject the contention.

As to the guest status of the defendant as a ground for lack of standing, the

Government does present that argument in this case. The District Court did not hold that the defendant lacked standing to raise the question of unreasonable search of the Wright apartment. It gave full consideration to the defendant's objection to the items discovered in the search. It conducted, in the absence of the jury, a hearing regarding the circumstances of the search, taking the testimony of Dolores Jean Wright and of the police officers. In the court's denial of the defendant's motion for judgment of acquittal notwithstanding the verdict, or, in the alternative, for a new trial, the court made careful findings as to the circumstances of the search, and held that Wright had voluntarily consented to the search and that no error had been committed in admitting Exhibit C, which had the defendant's fingerprint on it. It will be remembered that the court had, at the trial, reconsidered its admission of Exhibit D, and had excluded it, apparently on the ground of relevancy, since those items did not have fingerprints or other indicia of ownership or use by the defendant. The court had admonished the jury not to consider Exhibit D in its deliberations.

The question which the District Court had to answer and the question which faces this court is the naked question of whether or not the search by the narcotics officers of the bathroom in the Wright apartment was, in the circumstances, an "unreasonable search." That is what the Constitution forbids, and that is all that the Constitution forbids. The Constitution says nothing about joint tenants, lodgers, paying guests, non-paying guests. The status of such persons may, along with the other circumstances, have a bearing upon the question whether the search was unreasonable.

The crucial circumstance in the Jones case which distinguishes it from our case is that in the Jones case the tenant of the apartment, Evans, had not consented to the entry and search. In fact, in the Jones case, the entry was with a search warrant, which the court held to have

been validly issued. It also held that the search, after entry, was properly conducted. The court remanded the case to the District Court solely for the purpose of having that court pass upon the question whether the manner of entry into the house complied with 18 U.S.C. § 3109. The Jones case did not involve the question with which this opinion is concerned.

The fact that the entry and search, in the instant case, were made with the consent of Dolores Jean Wright, the tenant of the premises, is to me conclusive on the question of the reasonableness of the search. When the time comes that my guest, whether he has accompanied me to my front door to answer the bell or is lodged in the jailhouse for the time being, may forbid the entry into my house of any person to whose entry I choose to give my consent, I don't want to be charged with having had a part in making that law and of having laid the blame for it upon the Constitution. The instant decision goes beyond any precedent, and I must dissent from it.