**Richard W. BURGE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 18801.**

United States Court of Appeals Ninth Circuit.

Feb. 25, 1965.

Jertberg, Circuit Judge, dissented.
See also 9 Cir., 333 F.2d 210.

Wendell P. Kay, Kay & Miller, Anchorage, Alaska, for appellant.

Warren Colver, U. S. Atty., H. Russell Holland, Asst. U. S. Atty., Fairbanks, Alaska, for appellee.

Before CHAMBERS, Circuit Judge, MADDEN, Judge of the United States Court of Claims, and JERTBERG, Circuit Judge.

MADDEN, Judge:

Following a trial to a jury, appellant was convicted on one count of a two count indictment charging violations of 21 U.S.C. § 174.[1]

---

1.  "Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law * * * shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000 * * *

"Whenever on trial for a violation of this section the defendant is shown to have or have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

The count upon which appellant was convicted (Count 2) in substance charged that on or about the 23rd day of April, 1959, at Fairbanks, Alaska, the appellant did knowingly conceal and facilitate transportation of a narcotic drug, to wit: heroin.

Count 1, on which the jury was unable to agree, in substance charged that on or about the 23rd day of April, 1959, at Fairbanks, Alaska, appellant knowingly received, sold and facilitated the sale of a narcotic drug, to wit: heroin, to Hazel Geary.

Following conviction, the appellant was committed to the custody of the Attorney General of the United States for a period of five years.

Appellant's specification of errors may be grouped as follows:

1. Errors of the District Court in refusing to suppress, and in admitting into evidence, certain proffered exhibits claimed to have been obtained in violation of the provisions of the Fourth Amendment prohibiting unreasonable search and seizure;

2. Errors of the District Court in denying appellant's motion for judgment of acquittal made at the close of the government's case and renewed at the close of all the evidence; and

3. Errors of the District Court in the giving of certain instructions to the jury.

Before considering other specified errors, we shall first consider appellant's contention that the District Court erred in denying appellant's motion for a judgment of acquittal, under which contention we shall also consider whether the verdict of the jury is supported by substantial evidence.

■ The essential elements of the offense on which the jury returned its verdict of guilty are:

1. Knowingly concealing and facilitating the transportation of heroin;

2. Unlawful importation of the heroin by someone; and

3. The defendant's knowledge of such unlawful importation. See Griego v. United States, 298 F.2d 845 (10th Cir. 1962).

■ Under the second paragraph of § 174, quoted supra, proof that the defendant is shown to have or have had possession of a narcotic drug shifts to him the burden of explaining such possession to the satisfaction of the jury. In the absence of such satisfactory explanation, the application of the statutory rule of evidence set forth in § 174 is deemed sufficient to authorize conviction. Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925); Hernandez v. United States, 300 F.2d 114, (9th Cir. 1962); Ewing v. United States, 323 F.2d 674 (9th Cir. 1963).

■ Our review of the evidence convinces us that there is abundant evidence to establish the essential elements of the offense. The District Court properly denied appellant's motion and renewal thereof for judgment of acquittal. The testimony of the government's witness, Hazel Geary, standing alone, furnishes sufficient evidence to support the verdict.

Hazel Geary testified: that on the night of April 20, 1959, appellant approached her with a proposal to "dump a large quantity of heroin"; that she demanded a sample before she would do business on a larger scale; that she was furnished $20 by law enforcement officers and purchased a sample of heroin from appellant on April 22, 1959; that on that day she turned over to the officers an eyedropper and a hypodermic needle which evidence a trace of narcotics (Exhibit "A" at the trial); that at noon on April 23, 1959, she was furnished $400 in marked currency by the law enforcement officers and about 2:30 o'clock of that day purchased a quantity of heroin from the appellant with that money; that after the purchase she remained with appellant until about 7:30 o'clock of that day, when appellant transported her in his car to the Idle Hour Cafe where both were arrested. She further testified that just prior to the departure for the Idle Hour Cafe appellant stated to her, "You don't want to be out there with that stuff on you." The

heroin which Hazel Geary claimed to have purchased from appellant on that day was turned over to the officers after her arrest (Exhibit "B" at the trial). A search of the person of appellant and his automobile disclosed neither narcotics nor marked currency.

On appeal following conviction, the evidence is to be viewed in the light most favorable to support the verdict. The credibility of Hazel Geary and the weight to be accorded her testimony are matters within the exclusive province of the finder of the facts. While it is true that Hazel Geary admitted that she was a prostitute, a narcotics addict, had been convicted of a felony to wit: grand theft, was a government informer on appellant and was under a pending indictment for the offense of passing travelers' checks knowing the same to have been forged, and on which charge she had not been tried at the time of appellant's trial in September of 1962, nevertheless, it is apparent from the verdict of the jury that it believed her testimony rather than the testimony of the appellant who denied all knowledge of or connection with the narcotics transaction of which he was accused.

We will now consider the alleged errors of the District Court in refusing to suppress, and receiving in evidence proffered exhibits claimed by appellant to have been obtained in violation of his Constitutional guarantee not to be subjected to unreasonable searches and seizures.

The record shows that the appellant came from Anchorage to Fairbanks, Alaska, on the 18th day of April, 1959, to engage in the cardroom business with one Arthur Bell. From his arrival until his arrest he was a guest in a two-bedroom one-bathroom dwelling house located in Fairbanks, rented and partially occupied by one Dolores Jean Wright, hereinafter called Wright; that following the arrest of appellant and Hazel Geary at the Idle Hour Cafe in the early evening of April 23, 1959, Wright was arrested, accused of illegal possession of narcotics and taken to police headquarters. Two law enforcement officers testified that following the arrest of Wright they requested her permission to search her apartment; that Wright said "Yes," that she had nothing to hide, although when presented a written waiver of search she refused to sign it, saying, "You don't need that, you got my permission." The officers further testified that, based solely on the verbal permission, a search of Wright's apartment was made. As a result of the search they obtained items consisting of a glass bottle containing material identified as milk sugar (Exhibit "C"), and an eyedropper and hypodermic needle (Exhibit "D"), all of which items were taken from the bathroom of the apartment; that when the search was made no one was in the apartment and the searching officers were unaware that appellant was staying there as a guest. Upon objection of the appellant to the admission of said exhibits, a hearing was held before the court in the absence of the jury. Witnesses heard at that hearing were Wright, two officers who testified they had secured verbal permission to search the premises and another officer who testified that after the search Wright was requested to sign a written consent to search but that she refused to do so. Following the hearing the two exhibits were received in evidence.

In the presence of the jury, after receipt of Exhibits "C" and "D" into evidence, there was testimony that appellant's fingerprint was found on the glass bottle (Exhibit "C"); and that the eyedropper and hypodermic needle (Exhibit "D") evidenced a trace of narcotics. Hazel Geary testified that a bottle similar to Exhibit "C" had been used by appellant in the apartment of Wright in the course of mixing the heroin which she purchased from appellant (Exhibit "B") on April 23, 1959.

Later in the proceedings, and before the case was submitted to the jury, the district judge concluded that the admission into evidence of Exhibit "D" was in error, in that the items constituting said exhibit were not sufficiently linked

to the defendant. Thereupon, Exhibit "D" was stricken from the evidence and the jury was instructed to disregard the testimony relating to it.

The evidence presented by the prosecution included the $400 in marked currency which had been furnished by the law enforcement officers to Hazel Geary on April 23, 1959. Prior to the trial, appellant moved the District Court to suppress that evidence. Following the hearing on the motion and prior to trial, the District Court denied that motion. Following the arrest of appellant on the evening of April 23rd, his automobile was impounded by the arresting officers. On April 30, 1959, the officers received information from an undisclosed source that the marked money was secreted in appellant's automobile. The automobile was still impounded, and the officers searched it and found the marked currency secreted in the headlight section of the automobile. They did not obtain a search warrant and did not have the appellant's permission to make the search.

We shall first discuss the refusal of the District Court to exclude Exhibits "C" and "D."

As above stated, prior to the receipt in evidence of those exhibits, appellant moved to suppress them under the provisions of Rule 41(e), Federal Rules of Criminal Procedure. The district judge in his discretion elected to entertain the motion, although not timely made, and held a hearing in the absence of the jury. Following the hearing appellant's motion was denied and the exhibits were received in evidence over the objection of appellant. It was the view of the court that the appellant, having only the status of a house guest in the apartment of Wright, was bound by the verbal permission granted by her to the officers to search her apartment.

While there is much discussion in the briefs relating to the degree and character of proof required on the part of the government to support the validity of the search based upon oral permission of Wright given while under arrest and in custody of her accusers, we deem it unnecessary to decide the validity of the search as it might affect her. For the purposes of our opinion, we will assume that if Wright had been a defendant in the trial under review, the verbal permission given by her to the officers to search her apartment would have precluded her from relying upon the provisions of the Fourth Amendment to exclude the exhibits. However, Wright is not named in the indictment returned against appellant and was not a party to the trial resulting in appellant's conviction.

The problem before us is whether the search is lawful as it relates to the appellant. The government makes no claim: (1) that the search was based upon a search warrant; (2) that the search was incidental to a lawful arrest; (3) that the search was made with the consent of the appellant; (4) that Wright was authorized by the appellant to consent to the search; or (5) that exceptional circumstances existed which might justify the search without a search warrant.

On the night of the search appellant was, and for several days prior thereto had been, a house guest of Dolores Jean Wright. During that period appellant occupied one of the two bedrooms in the apartment, and shared the use of the one bathroom in the apartment as well as the kitchen, living room and back porch. The appellant was under arrest and in custody at the time of the search.

Our question is whether the officers' search of the apartment, in which they found Exhibit "C", the bottle of milk sugar, and Exhibit "D," the eyedropper and hypodermic needle, was a reasonable search. They made the search with the consent of Dolores Jean Wright, the tenant of the two-bedroom apartment. There was contradictory evidence about the fact, and the voluntariness, of her consent. The trial judge found that she had consented to the search and that her consent was voluntary. We would have no possible reason to hold that that finding was clearly erroneous.

Our situation is, then, that the tenant of a small apartment is accused by the police of some violation of law with regard to narcotics. She denies the accusation. The officers ask whether they may search her apartment. She says that they may, that she has nothing to hide. They enter and search and, in the one bathroom, the only one in the apartment, they find Exhibits "C" and "D," articles frequently used in the preparation and use of narcotics. They take those articles and scientific examination of them shows a fingerprint of the defendant on Exhibit "C" and traces of heroin in the two items which are Exhibit "D."

Obviously the items of evidence here in question did not prove much, since the appellant might well have picked up numerous articles in the bathroom and there left his fingerprints on them, quite innocently, and the two items in Exhibit "D," with traces of heroin in them, could have belonged to Wright, or to other acquaintances of hers. We think the appellant's conviction, by the jury, of violation of the narcotics laws could hardly have been induced to an appreciable extent by these trifling bits of evidence. The other evidence of the prosecution was direct and cogent, and easily supported the verdict. If it were necessary, we might well apply the "Harmless Error" provision of Rule 52(a) of the Federal Rules of Criminal Procedure.[2]

█ We shall, however, consider the problem on the assumption that the contested exhibits were of importance in the trial.

If a tenant of a two-bedroom, one-bathroom apartment rents one of her bedrooms to another person, and if the

narcotics squad picks up a narcotics victim and asks him where he got the narcotics, and he says he got them in that apartment, and the officers go to the apartment and tell the tenant what they have heard and she indignantly denies the possibility of such an occurrence and the officers ask if they may look through the apartment and she says they may but they will not find anything, and they do look and they find narcotics in the bathroom, may they not seize them? Does the Constitution say that this lady may lawfully consent to the entrance into her bathroom of any person in the whole wide world except officers of the government whose duty it is to enforce that government's laws? Does it say that the officers, having entered and seen objects whose only use is to violate the laws, have somehow blundered, so that the conclusive evidence which they have thus discovered cannot thereafter be used by their government to convict the guilty person?

The Constitution forbids "unreasonable searches." We see nothing unreasonable in the search, in the instant case, of Wright's bathroom, with her consent. We have no problem in this case of appellant's "standing" to object to the search and to the admission of the items seized. He did object, and we have considered his objection, but find it to be without merit. We are aware of no precedent for the proposal which the appellant urges upon us. In the case of Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, no one, neither the owner nor the guest, had given consent to the entry, and the discussion was with regard to the guest's standing, to sue, with which we are not concerned,

---

**2.** See People v. Parham, 60 Cal.2d 378, 33 Cal.Rptr. 497, 384 P.2d 1001, holding that the "miscarriage of justice" provision of Article VI, § 4½, of the Constitution of California was applicable, and that the erroneous admission into evidence of an illegally seized object did not require a reversal, in the absence of a showing of reasonable probability that the admission affected the verdict. The decision is notable because it is a deci-

sion of the Court, in an opinion by the Justice, Mr. Justice Traynor, who wrote the opinion in the case of People v. Cahan, 44 Cal.2d 434, 282 P.2d 905, 50 A.L.R.2d 513 (1955) excluding illegally seized evidence, six years before the Supreme Court of the United States, in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, made that rule a requirement of 14th Amendment due process.

and with the manner of entry into the house with a search warrant, which the officers had in the Jones case.

■ The appellant urges that the marked currency, which the witness Hazel Geary testified that she had paid the appellant for heroin, which currency was found in appellant's impounded automobile and was admitted in evidence as Exhibit "E," should not have been admitted, since the search which discovered it was made without the appellant's consent and without a search warrant.

49 U.S.C. § 781 in pertinent part provides:

"(a) It shall be unlawful (1) to transport, carry, or convey any contraband article in, upon, or by means of any * * * vehicle * * *; (2) to conceal or possess any contraband article in or upon any * * * vehicle, * * * or upon the person of anyone in or upon any * * vehicle * * *; or (3) to use any * * * vehicle * * * to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange, or giving away of any contraband article.

"(b) As used in this section, the term 'contraband article' means—

"(1) Any narcotic drug which has been or is possessed with intent to sell or offer for sale in violation of any laws or regulations of the United States dealing therewith; or which has been acquired or is possessed, sold, transferred, or offered for sale, in violation of any laws of the United States dealing therewith; * * *; or which does not bear appropriate tax-paid internal-revenue stamps as required by law or regulations;

"(2) * * *;

"(3) * * *;"

49 U.S.C. § 782 in pertinent part provides:

"Any * * * vehicle * * * which has been or is being used in violation of any provision of section 781 of this title, or in, upon, or by means of which any violation of said section has taken or is taking place, shall be seized and forfeited: *Provided*, * * *."

Upon the arrest of appellant, his automobile was seized by the officers and he was notified immediately that his car was being impounded "because it had been used in the sale and possession of narcotics." From the evidence which we have outlined above, it is apparent that the officers who seized the car had probable cause for believing that the car had been used in violation of the provisions of 49 U.S.C. § 781. See United States v. One 1952 Ford Victoria, 114 F.Supp. 458 (N.D.Cal.S.D.1953). From the time of seizure until the search, the vehicle was in the lawful custody of the United States. In these circumstances the search without a warrant of appellant's car could not be said to be "unreasonable."

The appellant takes exception to several of the instructions given by the trial court, criticizing them not only as individual instructions but in combination. We have considered these criticisms and find no substantial merit in them.

The judgment of conviction is affirmed.

CHAMBERS, Circuit Judge (concurring):

I now concur on rehearing with Judge Madden in this case contrary to the position I took in concurring with Judge Jertberg when we heard the case. 333 F.2d 210.

At that time, I thought we were bound by higher authority to hold in accordance with Judge Jertberg's views. Now I have decided that this is a case not yet reached by the Supreme Court.

It seems to me that the freely given permission of Dolores Wright, one joint but casual occupant of the bathroom, for search of the medicine chest should not offend the constitutional protections given the other joint user of the bathroom, Richard Burge. Such protection is a little too much right of privacy.

Further, the evidence was simply driving a ten penny nail into a well nailed and sealed coffin.

In reversing my position, there is no way I can make myself "look good." But my commission says I was appointed during good behavior. It says nothing about being appointed to "look good."

JERTBERG, Circuit Judge: (dissenting)

Although not noted in Judge Madden's opinion, it should be stated that the decision of a majority of the panel to affirm the judgment of conviction was made on a rehearing of the cause following the decision of the panel [Judge Madden dissenting] reversing the judgment of conviction and remanding the cause to the District Court for a new trial. See Burge v. United States, 333 F.2d 210 (9th Cir. 1964).

I dissent from the decision of the majority and I would reverse the judgment of conviction and remand the cause to the District Court for a new trial for the reasons stated in the majority opinion in Burge v. United States, supra.