## McMILLAN v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
April 20, 1928.

No. 8015.

1. Searches and seizures ⟨⟩7(26)—Defendant, disclaiming dominion over place and property found, cannot raise question of validity of search warrant.

Defendant, who, disclaimed all dominion over place and property found, by claiming that he merely happened to be going by premises and saw door open and thought he would drop in and take a nap, cannot raise question of validity of search warrant.

2. Intoxicating liquors ⟨⟩236(4)—Evidence in prosecution for possessing liquor in Indian country held sufficient to connect defendant with possession.

In prosecution for possessing intoxicating liquor in Indian country, evidence held sufficient to connect defendant with place where liquor was found and with offense charged.

In Error to the District Court of the United States for the Northern District of Oklahoma; Franklin E. Kennamer, Judge.

Sandy McMillan was convicted of unlawfully possessing intoxicating liquor in Indian country, and he brings error. Affirmed.

Errol Joyce, of Tulsa, Okl., for plaintiff in error.

John M. Goldesberry, U. S. Atty., of Tulsa, Okl. (W. B. Blair, Asst. U. S. Atty., of Tulsa, Okl., on the brief), for the United States.

Before LEWIS, Circuit Judge, and SCOTT and DAVIS, District Judges.

SCOTT, District Judge. Sandy McMillan was indicted for unlawful possession of intoxicating liquor in Indian country; it being alleged that on or about the 22d day

of June, 1927, he did wrongfully possess 1½ pints of whisky, located on a certain quarter section of land 1½ miles northwest of Turley, Tulsa county, Okl., said place having been within the limits of the Indian Territory and a part thereof prior to the admission of the state of Oklahoma into the Union, and being a place where the possession of spirituous and intoxicating liquor is and was prohibited by federal statute. Upon the trial, the defendant was convicted and sentenced to pay a fine of $200, and be imprisoned for two years in the Federal Penitentiary at Leavenworth, Kansas. Defendant brings the case here on error, and on his appeal presents and argues two questions only:

"First. That the search warrant and affidavit upon which the warrant was issued was void, and that the court erred in overruling defendant's motion to quash the search warrant and to exclude testimony.

"Second. That, if the search warrant and affidavit is good and if the court did not err as above set out, there is an insufficiency of evidence to connect the defendant with possession of any intoxicating liquor."

It appears without controversy: That about the 18th of June, 1927, T. A. Hubbard, special officer in the United States Indian Service for suppression of liquor traffic, made affidavit before George B. Mellott, United States commissioner, in substance, stating: "That the laws of the United States, namely, the National Prohibition Act (27 USCA), are being violated by reason of the facts, to wit, manufacturing, storing, introducing or disposing of intoxicating liquors and materials for the manufacture of intoxicating liquor, to wit, whisky, beer, wine, or other malt liquors by use of a certain yellow frame house and outbuilding located on the S. 2 of the S. E. 4 of Sec. 34, Tp. 21, R. 12, this land is located in both Tulsa and Osage counties and said house and outbuildings are located in either Osage or Tulsa county on above-mentioned tract of land and is occupied by or controlled by Sandy McMillan, being the premises of Sandy McMillan." That upon the foregoing affidavit the officer obtained a search warrant with recitals substantially the same as the affidavit, and with others proceeded to the premises and buildings in question for the purpose of making a search and seizure on the 22d day of June, 1927. The premises were located in Tulsa county and Northern district of Oklahoma.

The officer testified, and his testimony is not disputed: "There were three cars of us; that is, the men in our bunch was in three cars, and I was in one car, and I drove up to the front of the house, on the east side of the house. When I drove up there, I saw Sandy McMillan in the north room. This house sets virtually north and south, I presume it is. Down stairs. Then he came out through the partition door, and came to the east door, the side I was on. I got out and met him at the door and went inside and asked him his name; he said his name was Brown. First he didn't answer at all; I asked him a time or two and then he said Brown. 'Well,' I said, 'I have got a search warrant for this place here, and I want to serve it on somebody.' 'Well,' he said, 'I haven't got a damned thing to do with it.' 'Well,' I said, 'Who has?' He said, 'I don't know.' I says, 'Anybody else here?' He said, 'No.' Then I kept on talking with him. Finally he said, 'Let me see the warrant.' I handed him a copy of it, and he read it over. I says, 'You can just keep it.' He said, 'Hell, no'; and handed it back to me." "The other officers made the principal search. However in the north room there was an ice box and lots of bottles and beer. In the south room there was some chairs and settee and a crap table, and that is about all that I remember."

Another witness testified: "I saw him run from the south window to throw that whisky out when we run around, and I told Oscar he had better jump out and catch him." "We come in from the south side. The ice chest was in the north end of the house. I saw him first when he was looking through the south window, and then he run back to the north room. I saw him after he come back, and we heard these bottles rattling in there, and I told Oscar he had better catch him before he poured it out. I seen him when he set that fruit jar down by the ice box. Q. You hadn't been in the house at that time had you? A. No; I was right in the door."

The witnesses identified some of the liquor seized as corn whisky. The testimony and the circumstances tend to show that McMillan emptied the whisky into a slop bucket, that there was a quart or more of it, and that it was corn whisky.

As stated, the defendant claimed his name was Brown. He further claimed that he had nothing to do with the premises, that he happened to be going by and saw the door open and though he would drop in and take a nap. Later the witness Hubbard testified to a colloquy with the defendant, "Well, in our conversation Sandy said, in talking to

him, says, 'Don't you know me,' and I said, 'No; without your name is Brown;' and he said, 'Hell, it is Sandy.' " No other person was found in or about the premises.

[1] The question now occurs whether, under these circumstances, the defendant is in a position to raise the question of the validity of the search warrant. He disclaimed all dominion over the place and the property found. We think the defendant not in a position to raise this question in the circumstances disclosed by the record. Graham v. United States (C. C. A.) 15 F.(2d) 740; Cantrell v. United States (C. C. A.) 15 F.(2d) 953; United States v. Wexler (D. C.) 4 F.(2d) 391; United States v. Gass (D. C.) 14 F.(2d) 229; United States v. 185 Cases Scotch Whisky (D. C.) 15 F.(2d) 563; United States v. Williams (D. C.) 295 F. 219; Canada et al. v. United States (C. C. A.) 5 F.(2d) 488; Rouda v. United States (C. C. A.) 10 F.(2d) 916; Klein v. United States (C. C. A.) 14 F.(2d) 35.

[2] This leaves the question as to whether there is sufficient evidence to connect the defendant with the possession of this liquor. We have read the brief of plaintiff in error with care, but think the contentions without merit. The evidence was ample to connect the defendant with the place and with the offense charged.

We find no reversible error presented in the record, and the case must be and is affirmed.