# STATE OF HAWAII *v.* DENNIS MATIAS.

## No. 4696.

February 26, 1969.

Richardson, C.J., Marumoto, Abe and Levinson, JJ., and Circuit Judge Wong Assigned by Reason of Vacancy.

OPINION OF THE COURT BY RICHARDSON, C.J.

The question is whether a search and seizure, conducted with the consent of another, is a reasonable one within the spirit and meaning of the Fourth Amendment of the

United States Constitution[1] and Article I, sec. 5 of the Constitution of the State of Hawaii.[2]

On the basis of description by victims of a robbery, the police investigated the nearby housing area looking for the defendant. They saw him on a fourth floor balcony of an apartment building. With neither arrest nor search warrants, four police officers converged upon the apartment, rang the bell and obtained permission to enter the apartment from the tenant. The police seized, among other items, a coat lying on a bed in a bedroom occupied with the permission of the tenant, by another and defendant, and subsequently used that coat in a pre-arrest identification procedure. At trial, the court admitted the coat to which defendant claimed no ownership, over his objections that his constitutional protections against unreasonable searches and seizures had been violated. The judge entered the verdict of guilty from which defendant appeals.

## I.

*Timeliness of the Motion to Suppress Evidence.*

After ruling that the motion to suppress was untimely made, the trial judge nevertheless ruled upon the merits of the motion by holding the evidence admissible. This procedure was within the court's discretionary powers provided in H.R.Cr.P. 41(e):

"The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion,

---

[1] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[2] Prior to amendment, the State provision paralleled the Fourth Amendment. In 1968, the State Constitution was amended to specifically include "invasions of privacy."

*but the court in its discretion may entertain the motion at the trial or hearing."* (Emphasis added.)

The hearing and ruling upon the motion to suppress evidence moots the question of timeliness, and defendant can now appeal from the ruling on the motion.

## II.

### Standing to Object to an Unreasonable Search and Seizure.

We must keep in mind that the question of standing and the question of what constitutes an unreasonable search and seizure are separate questions. The former involves the question whether a party is entitled to have his claim to a protected right determined; the latter involves a determination of whether that right has been violated.

The appeal in *Jones* v. *United States,* 362 U.S. 257 (1960), raised the crucial question as to whether petitioner, a houseguest, had standing to object to sufficiency of the search warrant since he did not claim any property interest in the seized goods. The court indicated that the constitutional protections against government intrusion were not dependent on ownership or possession but on a person's claim to privacy of his person, property or home. At pp. 265-7, the court had stated:

"While this Court has never passed upon the interest in the searched premises necessary to maintain a motion to suppress, the Government's argument closely follows the prevailing view in the lower courts. They have denied standing to 'guests' and 'invitees' (*e.g., Gaskins* v. *United States,* 95 U.S. App. D.C. 34, 35, 218 F.2d 47, 48; *Gibson* v. *United States,* 80 U.S. App. D.C. 81, 84, 149 F.2d 381, 384; *In re Nassetta,* 125 F.2d 924; *Jones* v. *United States,* 104 U.S. App. D.C. 345,

262 F.2d 234), and employees, who though in 'control' or 'occupancy' lacked 'possession' (*e.g., Connolly* v. *Medalie,* 58 F.2d 629, 630; *United States* v. *Conoscente,* 63 F.2d 811). The necessary quantum of interest has been distinguished as being, variously, 'ownership in or right to possession of the premises' (*e.g., Jeffers* v. *United States,* 88 U.S. App. D.C. 58, 61, 187 F.2d 498, 501, *affirmed, Jeffers* v. *United States,* 342 U.S. 48), the interest of a 'lessee or licensee' (*United States* v. *De Bousi,* 32 F.2d 902), or of one with 'dominion' (*McMillan* v. *United States,* 26 F.2d 58, 60; *Steeber* v. *United States,* 198 F.2d 615, 617). We do not lightly depart from this course of decisions by the lower courts. We are persuaded, however, that it is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions, developed and refined by the common law in evolving the body of private property law which, more than almost any other branch of law, has been shaped by distinctions whose validity is largely historical. Even in the area from which they derive, due consideration has led to the discarding of these distinctions in the homeland of the common law. *See* Occupiers' Liability Act, 1957, 5 and 6 Eliz. 2, c. 31, carrying out Law Reform Committee, Third Report, Cmd. 9305. Distinctions such as those between 'lessee,' 'licensee,' 'invitee,' and 'guest,' often only of gossamer strength, ought not to be determinative in fashioning procedures ultimately referable to constitutional safeguards."

Petitioner Jones was found to have a right to privacy because he was legitimately on the premises with the permission of the tenant. This finding suggests that a person has a "halo" of privacy wherever he goes and can invoke

a protectable right to privacy wherever he may legitimately be and reasonably expect freedom from governmental intrusion:

> "No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him. This would of course not avail those who, by virtue of their wrongful presence, cannot invoke the privacy of the premises searched. As petitioner's testimony established Evans' consent to his presence in the apartment, he was entitled to have the merits of his motion to suppress adjudicated." *Jones* v. *United States, supra* at 267.

Our conclusion is buttressed by the holding in *Mancusi* v. *De Forte,* 392 U.S. 364, 88 S. Ct. 2120 (1968); wherein the court specifically rejected any title-ownership standard to standing to object. In that case, the government had without warrant searched and seized material from a union office which defendant shared with others. The court stated:

> "The Court's recent decision in *Katz* v. *United States,* 389 U.S. 347, also makes it clear that capacity to claim the protection of the amendment depends not upon a property right in the invaded place but upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion."

In our opinion, defendant Matias, even though an overnight guest of the tenant, had a right to privacy in the premises of that apartment. He had the right to reasonably expect freedom from governmental intrusion.

### III.

#### *What Constitutes a Valid Consent?*

Our study of the history of the Fourth Amendment[3] and innumerable decisions of the United States Supreme Court on unreasonable searches and seizures compels us to conclude that the Fourth Amendment right may be waived only by the individual entitled to the right. It follows that a search and seizure under a third party consent is unreasonable and hence violative of the spirit and meaning of the constitutional prohibition.

Having established that Matias had a right to privacy in the apartment and therefore has standing to object, we further hold that his constitutional right to privacy cannot be waived by another unless he has authorized another to do so.

The Fourth Amendment guarantees the individual a right to privacy in person and property. As a rule, government officials must obtain a search warrant if that search and seizure is to be declared a reasonable one. *Weeks* v. *United States,* 232 U.S. 383 (1914).[4]

---

[3] See Lasson, *The History and Development of the Fourth Amendment to the United States Constitution,* 55 Johns Hopkins University Studies in Historical and Political Science 223 (1937).

[4] At pp. 391-2, the court stated:

"The effect of the Fourth Amendment is to put the courts of the United States and Federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers and effects against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all entrusted under our Federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the Federal Constitution, should find no sanction in the judgments of the courts which are charged at all times with the support of the Constitution and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights."

As to exceptional circumstances which may excuse the need for a warrant, see *Johnson* v. *United States*, 333 U.S. 10, 13-15 (1948).

In the instant case, the government had neither search warrant nor exceptional circumstances to support the validity of the search and seizure. The government contends the validity of this search and seizure rests upon the consent of another person, but we reject the argument because the consent of the tenant operates only to waive the consenter's right to protection under the amendment; that is to say, the tenant waives only his right to object to an unreasonable search and seizure.

In *Stoner* v. *California*, 376 U.S. 483, 489 (1964), the court stated that:

"It is important to bear in mind that it was the petitioner's constitutional right which was at stake here, and not the night clerk's nor the hotel's. *It was a right, therefore, which only the petitioner could waive by word or deed, either directly or through an agent.* It is true that the night clerk clearly and unambiguously consented to the search. But there is nothing in the record to indicate that the police had any basis whatsoever to believe that the night clerk had been authorized by the petitioner to permit the police to search the petitioner's room." (Emphasis added.)

We think that the United States Supreme Court made it clear in *Stoner, supra,* that the Fourth Amendment right is a personal right; that the right can be waived by the possessor of that right only by word or deed or through an agent, and that the right would disappear if left to the "unfettered" discretion of others.

The conviction is reversed and the case is remanded for a new trial.

*Joseph L. Dwight, Jr.* for defendant-appellant.

*John H. Peters,* Prosecuting Attorney (*Robert E. Teruya,* Deputy Prosecuting Attorney, with him on the brief), for plaintiff-appellee.

---

DISSENTING OPINION OF WONG, CIRCUIT JUDGE.

The key question in this case that must be answered is whether a search was conducted in the first instance. If the answer is in the negative, we simply do not reach the issue formulated by the majority as to whether a search can be waived by consent of one other than the defendant.

The facts material to this question are as stated in the majority opinion. Because of their brevity, and for the sake of convenience, they are restated:

". . . four police officers converged upon the apartment, rang the bell and obtained permission to enter the apartment from the tenant. The police seized, among other items, a coat lying on a bed in a bedroom occupied with the permission of the tenant, by another and defendant, and subsequently used that coat in a pre-arrest identification procedure. At trial, the court admitted the coat to which defendant claimed no ownership, over his objections that his constitutional protections against unreasonable searches and seizures had been violated."

In addition, the following facts may be pertinent: The apartment was leased by Mayor Wright Housing to a Mrs. Parado and her five daughters. Immediately prior to their entry, the police officers were given admission not only to the apartment, but more specifically, to the bedroom in question. According to Mrs. Ponce, the former Mrs. Parado, the defendant without her knowledge had come to her apartment early in the morning ("I think I

heard him talking about 3 or 4 o'clock in the morning").
It was also her recollection that this occasion marked
only the second time that the defendant had "stayed
there."

The additional facts are not cited to suggest the pos-
sible denial of the defendant's right to privacy from a
search. Under *Jones* v. *United States,* 362 U.S. 257 (1960),
the defendant clearly has a standing to object to an un-
reasonable search and seizure.

The facts do indicate, however, that the officers were
legally in the apartment and in the bedroom thereof, their
admission having been consented to by the legal tenant
thereof. The defendant was not entitled to possession of
the bedroom to the exclusion of Mrs. Ponce. The officer
who entered the bedroom with her consent was therefore
lawfully on such premises. Under the open view doctrine,
if an officer is legally in a position to observe something
in plain view, there is no question of search. *People* v.
*Kamhout,* 227 Mich. 172, 198 N.W. 831 (1924); *State* v.
*Carpenter,* 181 Neb. 639, 150 N.W.2d 129 (1967); *see*
Reisig, "Searches and Seizures Handbook" 18 (Pract. Law
Inst. 1968). Since the jacket was lying on the bed in full
view of the officer, it was not discovered by search.

Thus, where officers had probable cause for making an
arrest, obtained a passkey and entered an apartment for
the purpose of arresting an occupant, "discovery of the
brick of marijuana did not constitute a search, since the
officer merely saw what was placed before him in full
view." *Ker* v. *California,* 374 U.S. 23, 43 (1963), citing
*United States* v. *Lee,* 274 U.S. 559 (1927); *United States*
v. *Lefkowitz,* 285 U.S. 452 (1932); and *People* v. *West,*
144 Cal. App.2d 214, 300 P.2d 729 (1956).

Nor has the open view doctrine been emasculated by
any of the cases cited in the majority opinion. These cases
do not even inquire into what constitutes a search (except

for *Katz* v. *United States,* 389 U.S. 347 (1967), which holds that wiretapping of a telephone booth constitutes a search and seizure *per se*). Instead, they define the constitutional rights of a defendant who has been aggrieved by an unreasonable search and seizure.

*Katz* and *Mancusi* v. *De Forte,* 392 U.S. 364, 88 S. Ct. 2120 (1968), for example, were cited by the majority to support its conclusion that the defendant had standing to object to an unreasonable search and seizure. *Stoner* v. *United States,* 376 U.S. 483 (1964), was cited for the proposition that "consent" to a search cannot be given by a third party. A distinction must be made, however, between consent to enter and consent to search.[1]

The significance of the *Katz* case is that it further extended the protection of the Fourth Amendment[2] against invasion of privacy by the uninvited ear, just as the Fourth had always shielded a person's privacy against the "intruding eye." *Katz* did not derogate against the open view doctrine, as espoused by *Ker*.

In *De Forte,* state officials conducted a search and seized union records from an office shared by De Forte and several other union officials. The parties had stipulated that De Forte spent "a considerable amount of time" in the office, and had custody of the papers at the moment of their seizure. With three justices dissenting, the United States Supreme Court concluded that De Forte

[1] *Cf. De Forte* at Footnote 3 where the question of the validity of a consent to a search of the area was not resolved by the court since consent was not claimed.

[2] Article I, sec. 5 of the Constitution of the State of Hawaii is parallel to the Fourth Amendment of the United States Constitution, except for the addition to the former, in 1968, of the words "invasions of privacy." Query whether this addition should be construed as extending the scope of the protection of the State constitution beyond that of the Federal constitution, or was made merely to conform the language of the former with the coverage of the Fourth Amendment as the same was extended by the United States Supreme Court to include invasion of privacy by electronic devices. See Const. Conv. Comm. Whole Rep. No. 55 (1968).

had standing to object to the admission of the papers at his trial. It found that even though De Forte shared an office with other union officers, he still

". . . could reasonably have expected that only those persons and their personal or business guests would enter the office, and that records would not be touched except with their permission or that of union higher-ups. This expectation was inevitably defeated by the entrance of state officials, their conduct of a general search, and their removal of records which were in De Forte's custody. It is, of course, irrelevant that the Union or some of its officials might validly have consented to a search of the area where the records were kept, regardless of De Forte's wishes, for it is not claimed that any such consent was given, either expressly or by implication."[3]

In the instant case, the jacket was lying on the bed, fully exposed to view to the officer entering the bedroom. No search was necessary to discover the jacket. The defendant, who had entered the premises unbeknownst to Mrs. Ponce, spent only a few hours on the premises, on this his second visit, and was not given possession of the bedroom to the exclusion of Mrs. Ponce. Whatever "privacy" he was entitled to was subject to physical intrusion by Mrs. Ponce and any of her other invitees. He therefore had no standing to object to the entry by the police officer pursuant to Mrs. Ponce's consent. This is not the type of privacy protected by the constitution.

The privacy to which defendant was entitled to constitutional protection was the privacy against an unreasonable search and seizure. Since the facts of the case place it squarely within the open view doctrine, no search was conducted, and defendant's constitutional privacy against an unreasonable search and seizure was not vio-

---

[3] See footnote 2.

lated. The cases spelling out defendant's further rights after a search has been conducted are therefore inapropos.

In *Stoner,* the court held that the night clerk of a hotel could not consent to a search of the hotel room rented to a guest without the latter's consent. The teaching of this case is merely that an owner or landlord who has granted exclusive possession of the premises to another is without right to give valid consent to a search of such premises without authority of the tenant. It is even questionable as to whether such landlord has authority to consent to entry solely to view the premises, let alone search it, in view of the fact that he himself would ordinarily have no right to entry to the premises. Applying *Stoner* to this case simply means that no agent of Mayor Wright Housing could validly consent to a search of Mrs. Ponce's apartment without her authority.

This is to be clearly distinguished from the situation where the tenant himself authorizes entry. While such approved entry cannot constitute a valid waiver of a third party's right against a search, it will nevertheless permit the open view doctrine to become operative. *Stoner* would be analogous if the hotel guest had permitted an unregistered guest to share his room and had himself consented to entry into the room by police officers, who upon entry, take possession of an article in full view. Although such unregistered guest would have standing to object to an unreasonable search, unless a search has occurred, he certainly has no cause for complaint under the Fourth Amendment.

I respectfully dissent.